E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
SARAH SPIELBERGER (Cal. Bar No. 311175)
ALEXANDRA MICHAEL (Cal. Bar No. Pending)
Assistant United States Attorneys
General Crimes Section
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-3756
     Facsimile: (213) 894-0141
     E-mail:   alexandra.michael@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:23-cr-00429-JFW-11 |
|---|---|
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT RICARDO WILFREDO NICHOLSON |
| v. | |
| CARLOS CORONA, et al., | |
| Defendants. | |

1.   This constitutes the plea agreement between RICARDO WILFREDO NICHOLSON ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

2.   Defendant agrees to/that:

     a.   At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to count one of the

WP 04.09.2024

indictment in <u>United States v. CARLOS CORONA, et al.</u>, No. 2:23-cr-00429-JFW-11, which charges defendant with Conspiracy to Commit Bank Fraud, in violation of 18 U.S.C. § 1349.

      b.   Not contest facts agreed to in this agreement.

      c.   Abide by all agreements regarding sentencing contained in this agreement.

      d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

      e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

      f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

      g.   Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

      h.   Any and all criminal debt ordered by the Court will be due in full and immediately.  The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

      i.   Complete the Financial Disclosure Statement on a form provided by the USAO and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all of the documents requested therein, to the USAO by either email at

1   usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial

2   Litigation Section at 300 North Los Angeles Street, Suite 7516, Los

3   Angeles, CA 90012.  Defendant agrees that defendant's ability to pay

4   criminal debt shall be assessed based on the completed Financial

5   Disclosure Statement and all required supporting documents, as well

6   as other relevant information relating to ability to pay.

7          j.   Authorize the USAO to obtain a credit report upon

8   returning a signed copy of this plea agreement.

9          k.   Consent to the USAO inspecting and copying all of

10  defendant's financial documents and financial information held by the

11  United States Probation and Pretrial Services Office.

THE USAO'S OBLIGATIONS

13      3.   The USAO agrees to:

14          a.   Not contest facts agreed to in this agreement.

15          b.   Abide by all agreements regarding sentencing contained

16  in this agreement.

17          c.   At the time of sentencing, move to dismiss the

18  remaining counts of the indictment against defendant.  Defendant

19  agrees, however, that at the time of sentencing the Court may

20  consider any dismissed charges in determining the applicable

21  Sentencing Guidelines range, the propriety and extent of any

22  departure from that range, and the sentence to be imposed.

23          d.   At the time of sentencing, provided that defendant

24  demonstrates an acceptance of responsibility for the offense up to

25  and including the time of sentencing, recommend a two-level reduction

26  in the applicable Sentencing Guidelines offense level, pursuant to

27  U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

28  additional one-level reduction if available under that section.

3

1

## NATURE OF THE OFFENSE

2      4.   Defendant understands that for defendant to be guilty of

3  the crime charged in count one, that is, Conspiracy to Commit Bank

4  Fraud, in violation of Title 18, United States Code, Section 1349,

5  the following must be true:

6           a.   First, beginning no later than October 14, 2020, and

7  continuing through at least August 18, 2023, there was an agreement

8  between two or more persons to commit Bank Fraud, in violation of

9  Title 18, United States Code, Section 1344(1);

10          b.   Second, defendant became a member of the conspiracy

11 knowing of at least one of its objects and intending to help

12 accomplish it; and

13          c.   Third, one of the members of the conspiracy performed

14 at least one overt act for the purpose of carrying out the

15 conspiracy.

16     5.   Defendant understands that for an individual to be guilty

17 of Bank Fraud, in violation of Title 18, United States Code, Section

18 1344(1), the following must be true:

19          a.   First, the individual knowingly executed or attempted

20 to execute a scheme to defraud a financial institution of something

21 of value;

22          b.   Second, that the statements made as part of the scheme

23 were material; that is, they had a natural tendency to influence, or

24 were capable of influencing, a person to part with money or property;

25          c.   Third, the individual did so with the intent to

26 defraud the financial institution; and

27          d.   Fourth, the financial institution was insured by the

28 Federal Deposit Insurance Corporation.

A "scheme to defraud" means any deliberate plan of action or course of conduct by which someone intends to deceive or cheat, in other words to deprive the victim of money or property by means of deception.  It is not necessary for the government to prove that a financial institution was the only or sole victim of the scheme to defraud.  It is also not necessary for the government to prove that the individual was actually successful in defrauding any financial institution.  Finally, it is not necessary for the government to prove that any financial institution lost any money or property as a result of the scheme to defraud.

An "intent to defraud" means to act willfully and with the specific intent to deceive and cheat.

<u>PENALTIES AND RESTITUTION</u>

6.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1349, is: 30 years' imprisonment; a 5-year period of supervised release; a fine of $1,000,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

7.   Defendant understands that defendant will be required to pay full restitution to the victims of the offenses to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victims of the offenses to which defendant is pleading guilty and in amounts greater than those alleged in the counts to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses

suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offenses to which defendant is pleading guilty; and (b) any counts dismissed pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts.

8.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

9.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition. Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

10.   Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the conviction in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his conviction on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is automatic removal from the United States.

<u>FACTUAL BASIS</u>

11.   Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 13 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

a.   Beginning no later than October 14, 2020, and continuing through at least August 18, 2023, in Los Angeles County

and Orange County, within the Central District of California, and elsewhere, defendant conspired and agreed with co-defendants CARLOS CORONA, JOSE LUIS EDEZA JR., JOHN WESLEY BESS JR., RICARDO OCHOA JR., SAULO SOLARES, SOFIA GENESIS ALVAREZ, KAREN VANESSA MARTINEZ, VANESSA CORTES ARZATE, and CARLOS LUIZ ARELLANO (collectively, the "CO-CONSPIRATORS"), to knowingly and intentionally commit bank fraud. Specifically, defendant and the CO-CONSPIRATORS agreed to knowingly execute a scheme to fraudulently obtain money owned by Bank of America, N.A. ("BOA"), Citibank, N.A. ("Citi"), Wells Fargo, N.A. ("WFB"), JP Morgan Chase Bank ("Chase"), U.S. Bancorp ("USB"), Kinecta Federal Credit Union ("Kinecta"), Navy Federal Credit Union ("NFCU"), and SchoolsFirst Federal Credit Union ("SchoolsFirst") (collectively, the "Financial Institutions"), through materially false and fraudulent pretenses, representations, and promises. Defendant joined this conspiracy knowing of this object and intending to help accomplish it.

b.    At all times during the conspiracy, BOA, Citi, WFB, Chase, USB, Kinecta, NFCU, and SchoolsFirst were financial institutions insured by the Federal Deposit Insurance Corporation ("FDIC").

c.    In furtherance of the conspiracy, co-defendant SOLARES and others stole checks from the U.S. mail, including from mailboxes and post office mail collection boxes located outside of U.S. Post Office locations.  Co-defendants CORONA, EDEZA, BESS, and OCHOA, and other co-conspirators, would then take possession of the checks that co-defendant SOLARES and others stole.

d.    In furtherance of the conspiracy, defendant and co-defendants CORONA, EDEZA, BESS, OCHOA, ALVAREZ, MARTINEZ, CORTES

8

ARZATE, and ARELLANO, and other co-conspirators, solicited bank account holders through social media to provide their debit cards and bank account information to defendant and his co-conspirators.  In return, defendant and his co-conspirators promised these account holders a cut of any fraudulent funds deposited into their accounts. To circumvent the fraud protections of the Financial Institutions, defendant and his co-conspirators specifically requested bank accounts that had been open for a certain amount of time so that co-conspirators could get access to the stolen funds more quickly.  Once bank account holders responded to the advertisements via social media and provided the information requested in the advertisements, including bank account numbers, PIN numbers, and online banking log-in information, defendant and co-defendants CORONA, EDEZA, BESS, OCHOA, ALVAREZ, MARTINEZ, CORTES ARZATE, and ARELLANO also took physical possession of the account holders' debit cards.  Defendant and his co-conspirators then exchanged the debit cards and bank account information obtained from the bank account holders with each other.

e.    In furtherance of the conspiracy, co-defendants CORONA, EDEZA, BESS, and OCHOA, and other co-conspirators, deposited the stolen checks into the bank accounts that had been sourced by defendant and other co-conspirators.  In most cases, the stolen checks were falsely endorsed in the original payee's name.  In doing so, the co-conspirators falsely represented that they were the payees on the checks and were entitled to the funds and concealed that they were not the payees on the stolen checks and that they were not authorized to deposit the checks or receive the payees' funds.  In some cases, the checks were washed or altered to make the payee the

name of the owner of the bank account into which the checks were being deposited.

f.   In furtherance of the conspiracy, after the stolen checks were deposited into the bank accounts described above, co-defendants CORONA, EDEZA, BESS, and OCHOA, and other co-conspirators, rapidly depleted the fraudulently deposited funds from the account holders' accounts by making cash withdrawals, electronic transfers, and/or debit card purchases.

g.   Throughout the course of the conspiracy, to conceal the fraud, defendant and his co-conspirators instructed account holders to claim that their accounts had been compromised if contacted by the Financial Institutions about the fraudulent deposits.

h.   Also in furtherance of the conspiracy, defendant and his co-conspirators committed at least the following acts:

i.   On June 9, 2021, in response to a co-conspirator's Instagram direct message that he or she was interested in participating in the scheme, defendant told the co-conspirator to contact co-defendant BESS, which the co-conspirator did.

ii.   On July 2, 2021, in response to an undercover law enforcement officer's (the "UC") Instagram direct message stating that the UC had been banking with WFB for about five years and had a checking account that had been open for seven months, defendant said, "Okay cool. I deposit a check in your account and then when it clears we split the money up me you and the check plug."

iii. On July 3, 2021, in response to an Instagram solicitation posted by defendant, D.B. said that he had a WFB account.

iv.   On July 6, 2021, using Instagram direct messages, defendant explained to D.B. that he would "deposit a check in your account and then when it clears we split the money up me you and the check plug" and arranged to pick up WFB Card 0627 from D.B. at an address on South Main Street in Los Angeles, California.

v.   On July 7, 2021, a co-conspirator deposited check no. 10336 from V.P. payable to S. Co. in the amount of $14,217 into WFB Account 8290 using WFB Card 0627 at an ATM in Carson, California.

vi.   On July 7, 2021, defendant sent D.B. an Instagram direct message stating that defendant's "plug" had "just deposit[ed] a check in [D.B.'s] account" and that defendant would send D.B. a picture when he got it from his "plug."

vii. On July 7, 2021, using Instagram direct messages, defendant sent D.B. a photograph depicting a WFB ATM receipt documenting the deposit and WFB Card 0627.

viii.   On July 8, 2021, defendant told D.B. over Instagram direct messages that defendant's "plug" needed to "take the money out" and when his plug had finished doing so, defendant would pay D.B. his cut.

ix.   On August 19, 2021, defendant posted an Instagram story depicting a Wells Fargo ATM screen showing a checking account balance of $20,444.73 and a savings account balance of $26,871.28 and invited followers to direct message defendant if they were interested in achieving such balances.

x.   On or before October 20, 2021, defendant delivered Chase Card 8589 to co-defendant CORONA.

xi.   On October 20, 2021, co-defendant CORONA caused check no. 3221 from A.W.F., which was altered to be made payable to

1   A.R. in the amount of $10,900, to be deposited into Chase Account

2   2777 using Chase Card 8589 at an ATM in Inglewood, California.

3              xii. On October 21, 2021, in response to co-defendant

4   CORONA's Instagram direct message with a photograph depicting a Chase

5   ATM receipt documenting the check deposit and the caption "ur

6   account," defendant said, "sheesh."

7              xiii.    On November 9, 2021, defendant posted an

8   Instagram story depicting multiple envelopes containing cash, WFB ATM

9   receipts, and debit cards, and invited followers to direct message

10  him if they were interested in the same opportunity.

11       i.   Defendant admits that by engaging in the conduct and

12  acts described above: (1) he knowingly executed and participated in a

13  scheme to defraud the Financial Institutions of money; and (2) he did

14  so with the intent to defraud the Financial Institutions.  Defendant

15  also admits that by engaging in the conduct and acts described above,

16  his co-conspirators unlawfully obtained money from the Financial

17  Institutions through false and fraudulent pretenses, statements, and

18  representations, which had the natural tendency to influence the

19  Financial Institutions to part with money.

20       j.   Defendant admits that over the course of the

21  conspiracy, he attempted and intended to cause a loss of at least

22  $32,022.58 to several of the Financial Institutions.

23                          SENTENCING FACTORS

24       12.  Defendant understands that in determining defendant's

25  sentence the Court is required to calculate the applicable Sentencing

26  Guidelines range and to consider that range, possible departures

27  under the Sentencing Guidelines, and the other sentencing factors set

28  forth in 18 U.S.C. § 3553(a).  Defendant understands that the

                                    12

Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

13.  Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| Base Offense Level: | 7 | U.S.S.G. § 2B1.1(a)(1) |
| More than $15,000 of Loss | +4 | U.S.S.G. § 2B1.1(b)(1)(C) |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

14.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

15.  Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. §§ 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

16.  Defendant understands that by pleading guilty, defendant gives up the following rights:

a.  The right to persist in a plea of not guilty.

b.  The right to a speedy and public trial by jury.

c.  The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be

1    represented by counsel -- and if necessary have the Court appoint

2    counsel -- at every other stage of the proceeding.

3            d.    The right to be presumed innocent and to have the

4    burden of proof placed on the government to prove defendant guilty

5    beyond a reasonable doubt.

6            e.    The right to confront and cross-examine witnesses

7    against defendant.

8            f.    The right to testify and to present evidence in

9    opposition to the charges, including the right to compel the

10   attendance of witnesses to testify.

11           g.    The right not to be compelled to testify, and, if

12   defendant chose not to testify or present evidence, to have that

13   choice not be used against defendant.

14           h.    Any and all rights to pursue any affirmative defenses,

15   Fourth Amendment or Fifth Amendment claims, and other pretrial

16   motions that have been filed or could be filed.

17                        WAIVER OF APPEAL OF CONVICTION

18      17.  Defendant understands that, with the exception of an appeal

19   based on a claim that defendant's guilty plea was involuntary, by

20   pleading guilty defendant is waiving and giving up any right to

21   appeal defendant's conviction on the offense to which defendant is

22   pleading guilty.  Defendant understands that this waiver includes,

23   but is not limited to, arguments that the statute to which defendant

24   is pleading guilty is unconstitutional, and any and all claims that

25   the statement of facts provided herein is insufficient to support

26   defendant's plea of guilty.

27

28

                                      14

1

<u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

2    18.  Defendant agrees that, provided the Court imposes a term of
3 imprisonment within or below the range corresponding to an offense
4 level of 9 and the criminal history category calculated by the Court,
5 defendant gives up the right to appeal all of the following: (a) the
6 procedures and calculations used to determine and impose any portion
7 of the sentence; (b) the term of imprisonment imposed by the Court;
8 (c) the fine imposed by the Court, provided it is within the
9 statutory maximum; (d) to the extent permitted by law, the
10 constitutionality or legality of defendant's sentence, provided it is
11 within the statutory maximum; (e) the amount and terms of any
12 restitution order; (f) the term of probation or supervised release
13 imposed by the Court, provided it is within the statutory maximum;
14 and (g) any of the following conditions of probation or supervised
15 release imposed by the Court: the conditions set forth in Second
16 Amended General Order 20-04 of this Court; the drug testing
17 conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the
18 alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

19    19.  The USAO agrees that, provided (a) all portions of the
20 sentence are at or below the statutory maximum specified above and
21 (b) the Court imposes a term of imprisonment within or above the
22 range corresponding to an offense level of 9 and the criminal history
23 category calculated by the Court, the USAO gives up its right to
24 appeal any portion of the sentence, with the exception that the USAO
25 reserves the right to appeal the following: (a) the amount of
26 restitution ordered.

27 ///

28 ///

1

## RESULT OF WITHDRAWAL OF GUILTY PLEA

2       20.  Defendant agrees that if, after entering a guilty plea

3  pursuant to this agreement, defendant seeks to withdraw and succeeds

4  in withdrawing defendant's guilty plea on any basis other than a

5  claim and finding that entry into this plea agreement was

6  involuntary, then (a) the USAO will be relieved of all of its

7  obligations under this agreement; and (b) should the USAO choose to

8  pursue any charge that was either dismissed or not filed as a result

9  of this agreement, then (i) any applicable statute of limitations

10  will be tolled between the date of defendant's signing of this

11  agreement and the filing commencing any such action; and

12  (ii) defendant waives and gives up all defenses based on the statute

13  of limitations, any claim of pre-indictment delay, or any speedy

14  trial claim with respect to any such action, except to the extent

15  that such defenses existed as of the date of defendant's signing this

16  agreement.

17           ## RESULT OF VACATUR, REVERSAL, OR SET ASIDE

18       21.  Defendant agrees that if the count of conviction is

19  vacated, reversed, or set aside, both the USAO and defendant will be

20  released from all their obligations under this agreement

21              ## EFFECTIVE DATE OF AGREEMENT

22       22.  This agreement is effective upon signature and execution of

23  all required certifications by defendant, defendant's counsel, and an

24  Assistant United States Attorney.

25                   ## BREACH OF AGREEMENT

26       23.  Defendant agrees that if defendant, at any time after the

27  signature of this agreement and execution of all required

28  certifications by defendant, defendant's counsel, and an Assistant

16

United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

24.  Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a.  Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.  Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.  Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action

17

against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

<u>COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES</u>
<u>OFFICE NOT PARTIES</u>

25.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

26.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 13 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this

paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

27.   Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.   Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

NO ADDITIONAL AGREEMENTS

28.   Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

///

///

///

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

29.   The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

E. MARTIN ESTRADA
United States Attorney

_Alexandra Michael_                               4/16/2024
_____          _____
ALEXANDRA MICHAEL                                 Date
Assistant United States Attorney

                                                  4-16-24
_____          _____
RICARDO WILFREDO NICHOLSON                        Date
Defendant

_Anthony M. Solis_                   4-16-2024
_____          _____
ANTHONY SOLIS                                     Date
Attorney for Defendant RICARDO
WILFREDO NICHOLSON

///

///

///

1          <u>CERTIFICATION OF DEFENDANT</u>

2          I have read this agreement in its entirety.  I have had enough

3  time to review and consider this agreement, and I have carefully and

4  thoroughly discussed every part of it with my attorney.  I understand

5  the terms of this agreement, and I voluntarily agree to those terms.

6  I have discussed the evidence with my attorney, and my attorney has

7  advised me of my rights, of possible pretrial motions that might be

8  filed, of possible defenses that might be asserted either prior to or

9  at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

10  of relevant Sentencing Guidelines provisions, and of the consequences

11  of entering into this agreement.  No promises, inducements, or

12  representations of any kind have been made to me other than those

13  contained in this agreement.  No one has threatened or forced me in

14  any way to enter into this agreement.  I am satisfied with the

15  representation of my attorney in this matter, and I am pleading

16  guilty because I am guilty of the charge and wish to take advantage

17  of the promises set forth in this agreement, and not for any other

18  reason.

19

20  _____          _____
   RICARDO WILFREDO NICHOLSON               Date
   Defendant

21

22

23  ///

24  ///

25  ///

26

27

28

                                    21

CERTIFICATION OF DEFENDANT'S ATTORNEY

I am RICARDO WILFREDO NICHOLSON's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

_Anthony M. Solis_
ANTHONY SOLIS
Attorney for Defendant RICARDO
WILFREDO NICHOLSON

4-16-2024
Date